UNITED STATES of America,
Plaintiff–Appellee,

v.

Leonard P. RIFFE, Defendant–Appellant.

No. 93–1878.

United States Court of Appeals,
Sixth Circuit.

Submitted April 21, 1994.

Decided July 6, 1994.

Janet L. Parker, Asst. U.S. Atty., Bay City, MI (briefed), for plaintiff-appellee.

Robert J. Dunn, Bay City, MI (briefed), for defendant-appellant.

Before: MERRITT, Chief Judge; KENNEDY and NELSON, Circuit Judges.

MERRITT, Chief Judge, delivered the opinion of the court, in which NELSON, Circuit Judge, joined. KENNEDY, Circuit Judge (pp. 570–72), delivered a separate opinion concurring in part and dissenting in part.

MERRITT, Chief Judge.

Defendant Leonard Riffe appeals his convictions and sentences for conspiracy to distribute marijuana while a prisoner in violation of 21 U.S.C. § 846 (Count 1) and for aiding and abetting the use of the mail to facilitate the distribution of marijuana in prison in violation of 21 U.S.C. § 843(b) (Counts 2 and 3). On appeal, Riffe claims that the district court committed reversible error when it refused to give a jury instruction on his theory of defense of duress by fellow prisoners and that there was insufficient evidence to support convictions on Counts 2 and 3. Although we find that sufficient evidence existed for the jury to convict, we agree that the district court erred when it refused to give a duress jury instruction. The most significant issue before us is whether the defense of duress, and hence an instruction on duress, is available only if a prisoner has attempted to present himself to prison authorities and attempted to seek safe haven from prison administrative procedures even though there is evidence that such action is likely to result in serious physical harm or death.

## I.

Riffe is an inmate at Michigan's Standish Maximum Correctional Facility. In 1992, a federal grand jury indicted Riffe and Stephanie Kania, Riffe's girlfriend, for conspiracy to distribute marijuana and aiding and abetting the use of the mail to facilitate distribution of marijuana. Kania pled guilty and agreed to cooperate with the government. Defendant was tried by a jury and convicted of all three counts.

The goal of defendant's scheme was to smuggle marijuana into Standish. Kania would receive packages containing marijuana or money to buy marijuana at her post office box in Carrollton, Michigan, sent by an unknown coconspirator. Once a mailing arrangement was made, Riffe would call Kania and instruct her to retrieve the package from her post office box and deliver the marijuana

to a prison guard at a location outside the prison arranged by Riffe. The guard would then deliver the marijuana to Riffe inside the prison.

■ On appeal, Riffe argues that the district court erred in denying his judgment of acquittal motions on Counts 2 and 3 because the evidence was insufficient to support the convictions for knowingly and intentionally aiding and abetting the use of the mail to facilitate the distribution of marijuana. He argues that the government failed to present any evidence that he was directly involved in the actual mailing of the marijuana. He contends that the evidence merely showed that he had apprised other Standish inmates of Kania's mailing address and that those inmates were responsible for arranging the mailings. However, he admitted that he instructed Kania about the packages, that he utilized Kania to pick up the marijuana, that he arranged drops between Kania and prison guards outside the prison and that he arranged for the guards to deliver the marijuana to him. He concludes, however, that this evidence is insufficient to convict him under 21 U.S.C. § 843(b). When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Head,* 927 F.2d 1361, 1365 (6th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991).

■ The statute under which the defendant was charged and convicted reads:

It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of [a drug trafficking crime].

21 U.S.C. § 843(b). The statute specifically defines "communication facility" to include the mail. 21 U.S.C. § 843(b). The elements of § 843(b) which the jury was required to find beyond a reasonable doubt are (1) the knowing or intentional (2) use of the mail (3) to facilitate the commission of the marijuana distribution. *United States v. Dotson,* 871 F.2d 1318, 1321 (6th Cir.1989)(citation omitted), *vacated in part on other grounds,* 895 F.2d 263 (6th Cir.), *cert. denied,* 498 U.S. 831, 111 S.Ct. 94, 112 L.Ed.2d 66 (1990). Because Riffe was charged with aiding and abetting, the second element actually required the jury to find that Riffe aided and abetted the use of the mail. 18 U.S.C. § 2. Riffe argues incorrectly that he could not have aided and abetted in the use of the mail because he was in prison when the packages were mailed.

Kania testified that she would receive packages at her post office box based on Riffe's arrangements, that she knew the packages contained either marijuana or money to purchase marijuana which would eventually be smuggled into the prison and that Riffe was the only person who knew her post office box number. Riffe would call her and tell her that a package was coming to her post office box and that she should retrieve it. Riffe would later call her to affirm that the package of drugs had arrived and give her instructions regarding where to meet a prison guard to forward the package to him.

Postal Inspector Paul Durand's trial testimony supported Kania's testimony. He also testified that when he confronted Riffe about the scheme, Riffe admitted that he had arranged the mailings to be sent to Kania's post office box and had arranged for the prison guards to receive the marijuana from Kania and deliver it to him in the prison.

■ While Riffe is correct that he might not have had direct involvement in the actual mailing of the packages because he was in prison, he clearly aided and abetted others, including Kania, in using the mail to facilitate this drug scheme. He directed the entire scheme, arranged for third parties to mail the marijuana to Kania, directed Kania to use her post office box for the drug offense and instructed Kania on how to further facilitate the scheme once she received the mailed packages. Contrary to defendant's argument, there is no requirement that the defendant be the person who initiates the mailing in order to be convicted under § 843(b). *United States v. McLernon,* 746 F.2d 1098,

1107 (6th Cir.1984).[1] Viewing the evidence in the light most favorable to the government, sufficient evidence existed for the jury to find all of the elements of § 843(b) beyond a reasonable doubt.

## II.

■ Riffe next argues that the district court committed reversible error when it refused to give the standard Sixth Circuit jury instruction or allow the jury to pass on his defense of duress.[2] Riffe's theory of defense throughout trial was that he was under duress, including the threat of immediate harm, from a prison gang to supply marijuana to members of the gang as repayment of a debt which he owed to them because Riffe's girlfriend, Kania, had used or failed to deliver $1,300 worth of cocaine that belonged to the gang. He offered significant evidence that gang members threatened to kill him if he did not carry out this smuggling operation, and he argues that he was entitled to have the jury pass on his defense of duress rather than have it ruled out by the court.

Riffe presented evidence that he had no alternative but to comply with the demands of the prison gang to smuggle marijuana into the prison, that going to prison officials would have put him in more danger because the protective segregation was ineffective and that he would have been put in additional danger from other inmates because prison officials would have required him to identify the inmates who were threatening him. Defense witness Michael Laukas, an inmate at Standish, testified that he saw and heard gang members threatening Riffe with knives

over the smuggling of marijuana in order to repay the $1,300 debt and that Riffe was reasonably afraid for his life. Laukas also testified that Riffe could not have obtained adequate protection by prison officials. He explained that Standish did not have an adequate protection system and that Riffe would have put himself at greater risk of harm if he had gone to prison officials for help because they would have required him to give up the names of inmates who were threatening him.

Riffe testified that gang members had threatened his life if he refused to smuggle marijuana into the prison for them. He explained that he did not report the threats to prison officials because prison officials would have required him to disclose the names of inmates making the threats and that the prison's protection system would not have adequately safeguarded his physical well-being after making such identifications. He testified that the basis for this belief was that in 1985–86 while in protective segregation after giving up a name to prison officials, Riffe had been stabbed in the chest. He also testified that a friend had been killed after a similar incident in another institution.

Postal Inspector Durand also testified that Riffe had relayed to him that he feared for his life while in the prison, and Kania testified that she was concerned with the defendant's physical safety in the prison and that the defendant had told her that he was being threatened if he did not continue to produce marijuana for inmates in the prison.

■ The district court refused to give the instruction because it found that the defendant had failed to meet the duress instruc-

---

**1.** In *McLernon*, this court reviewed a similar sufficiency of the evidence claim under § 843(b) for unlawful use of a telephone in facilitation of a drug trafficking crime. We held, contrary to the argument of one of the defendants, that a violation of § 843(b) is established even when an individual other than the defendant initiates the communication. *McLernon*, 746 F.2d at 1107.

**2.** The Pattern Jury Instruction for coercion or duress reads:

(1) One of the questions in this case is whether the defendant was coerced, or forced, to commit the crime.

(2) Coercion can excuse a crime, but only if the defendant *reasonably* feared that he would

immediately be killed or seriously hurt if he did not commit the crime, and there was no reasonable way for him to escape.

(3) The government has the burden of proving that the defendant was not coerced. For you to find the defendant guilty, the government must prove that his fear was unreasonable. In other words, *the government must prove that it was not reasonable for him to think that committing the crime was the only way to save himself from death or serious bodily harm.* Unless the government proves this beyond a reasonable doubt, you must find him not guilty.

Sixth Circuit Pattern Jury Instruction § 6.05 (emphasis added).

tion requirements set forth in *United States v. Singleton*, 902 F.2d 471 (6th Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). In *Singleton*, this Court adopted five factors that control whether a jury instruction presenting a duress defense should be given. Evidence must be presented:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) *that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;*
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;
>
> (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Newcomb*, 6 F.3d 1129, 1134–35 (6th Cir.1993)(quotations omitted)(emphasis added) (citing *Singleton*, 902 F.2d at 472–73). The district court premised its refusal to give the instruction on the third factor which it interpreted as a *per se* rule. Although the district court found affirmatively that the defendant and Laukas "had a well founded belief that there might be dire consequences to them if they presented themselves to the administration," it applied this *per se* rule requiring Riffe to attempt to seek protection from prison officials in order for the duress defense to be considered by the jury. The district court compared the case to prison escape cases which generally require the escapee to turn himself in to police as soon as reasonably possible after escape in order to be entitled to consideration of the defense of duress. *United States v. Bailey*, 444 U.S. 394, 411–13, 100 S.Ct. 624, 635–36, 62 L.Ed.2d 575 (1980). Under this analysis, the court found that Riffe's failure to seek protection prohibited him from receiving the duress instruction under the "reasonable, legal alternative" prong of *Singleton*. We reject the application of a *per se* rule in a case of this type.

We review "the jury charge as a whole to determine whether it fairly and adequately submitted the issues and the law to the jury." *Newcomb*, 6 F.3d at 1132 (citing *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir.1991)). Refusal to give an accurate instruction is reversible if it impairs the defendant's theory of the case and is not covered adequately by the instructions given. *Newcomb*, 6 F.3d at 1132. The defendant has a preliminary burden to introduce some evidence to trigger consideration of the defense, although that burden is not a heavy one:

> Although a jury instruction "should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation," *United States v. James*, 819 F.2d 674, 675 (6th Cir.1987)(citation omitted), so long as there is even weak supporting evidence, "[a] trial court commits reversible error in a criminal case when it fails to give an adequate presentation of a theory of defense." *United States v. Plummer*, 789 F.2d 435, 438 (6th Cir.1986).

*Newcomb*, 6 F.3d at 1132.

The "no reasonable, legal alternative" prong of *Singleton* at issue in this case stems from the Supreme Court's decision in *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). In *Bailey*, the defendant escaped from federal prison because of extremely poor prison conditions and did not turn himself in to other authorities after the escape. In analyzing the duress defense, the Court stated that "if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense[ ] will fail." *Id.* at 410, 100 S.Ct. at 635. The Court concluded that in order to be entitled to a duress instruction, the escapee must offer evidence "justifying his continued absence from custody as well as his initial departure and that an indispensable element of such an offer is testimony of a bona fide effort to surrender or return to custody as soon as the claimed duress ...

had lost its coercive force." *Id.* at 412–13, 100 S.Ct. at 635–36.

■ The rule in *Bailey* is not a *per se* rule. *Bailey* recognizes that in most escape cases, an escapee will be able to remove himself from the threatened harm or duress by turning himself in to authorities. However, the case also recognizes that the escapee might be able to offer evidence "justifying his continued absence." In other words, there might be situations in which an escapee could offer evidence justifying his remaining at large because of the coercive force or duress that caused his initial escape. Similarly here, while the typical case will require a prisoner to attempt to seek help from prison authorities as an alternative to committing the crime, there may be cases in which the prisoner will be able to offer evidence justifying his decision not to go to prison authorities: that seeking help from prison authorities would not have been a *reasonable* legal alternative but instead would have subjected him to continued or additional physical harm.

Riffe presented evidence of threats of immediate harm in this case, and the district court acknowledged that Riffe had a well-founded fear that going to prison officials might have placed him in more danger. In other words, seeking help might not have been a *reasonable* legal alternative to avoiding immediate physical harm. The district court, by erroneously applying a *per se* rule, abolished the reasonableness requirement set forth in *Bailey* and *Singleton.*

In sum, the district court erred when it refused to give the duress instruction. Riffe met his burden of presenting some evidence to satisfy *Singleton,* and while the evidence may not be overwhelming or convince the jury that he was forced to commit this crime and had nowhere to turn in the prison for safe haven, "so long as there is even weak supporting evidence," refusal to give the instruction is reversible error. *Newcomb,* 6 F.3d at 1132 (quotations and citations omitted). Our system guarantees the right of trial by jury in criminal cases, and the District Court should not have taken the question of duress from the jury on the basis of a flat rule that the defense is unavailable to

prisoners who do not report to prison guards threats from other prisoners.

Accordingly, the defendant's convictions are REVERSED and the case is REMANDED for a new trial.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in Judge Merritt's opinion except the holding that defendant is entitled to a new trial because of the court's refusal to give a duress instruction. I should first note that any failure to give the instruction was harmless with respect to the conspiracy count. Defendant testified that he was engaged in the conspiracy to possess with intent to distribute and distribution, and did distribute marijuana before any threats were made against him. Indeed, the threats came about because members of a prison gang overheard him discussing his ability to bring in drugs and demanded he bring in drugs for them. However, my disagreement is broader than that. I agree with the District Court that defendant failed to establish his entitlement to the requested instruction.

In *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), the Supreme Court held that the district court properly rejected evidence of prison conditions, described by the dissenters as harmful to the defendant prisoners' health and safety. Although the Court did not pass upon whether those conditions were such that defendants could claim an excuse of duress for their escape, it held that the fact they would be subject to the same conditions if they turned themselves in did not excuse their failure to do just that. The Court held that the evidence failed as a matter of law to reach the minimum threshold that would have required an instruction on duress. *Id.* at 414, 100 S.Ct. at 636–37.

The District Court here made a finding that the evidence of duress was insufficient in two respects. First, defendant's own prior illegal activity in smuggling marijuana into the prison placed him in the position of having to enlarge his operation to bring in drugs for those who threatened him. Thus, he had "recklessly or negligently placed himself in a situation in which it was probable he would

be [forced to choose the criminal conduct]." *United States v. Newcomb,* 6 F.3d 1129, 1134 (6th Cir.1993) (quoting *United States v. Singleton,* 902 F.2d 471, 472 (6th Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990) (bracketed material in original)). Second, the District Court held that defendant had not established that he had no reasonable, legal alternative to violating the law. As the Supreme Court stated in *Bailey,* after discussing the defenses of duress and necessity under the common law and under the Model Criminal Code,

> [u]nder any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, "a chance both to refuse to do the criminal act and also to avoid the threatened harm," the defenses will fail. [W.] LaFave & [A.] Scott, [*Handbook on Criminal Law* § 28] p. 379 [ (1972) ]. Clearly, in the context of prison escape, the escapee is not entitled to claim a defense of duress or necessity unless and until he demonstrates that, given the imminence of the threat, violation of [18 U.S.C.] § 751(a) was his only reasonable alternative.

*Bailey,* 444 U.S. at 410–11, 100 S.Ct. at 635 (footnote omitted).

Defendant Riffe testified that in order to be placed in protective custody he would have to identify the persons who threatened him and that the prison authorities could not guarantee his safety. I concede that prison authorities cannot guarantee inmates' safety. The government cannot guarantee anyone's safety, but the common law defense of duress requires that a threat of *imminent* death or serious bodily injury exist. *Id.* at 409, 100 S.Ct. at 634. Although the government cannot guarantee the safety of those threatened by organized crime figures or those who live in neighborhoods dominated by vicious street gangs, we do not excuse the crimes of either group because they were committed as a result of threats, if those threats were not of an imminent danger. Defendant's unwillingness to go to the prison authorities or other law enforcement authorities was also due to the fact that for his safety he would have to remain in administrative or protective segre-

gation and could not be released into the general prison population. The unpleasant nature of that alternative does not establish that it is unreasonable to require him to pursue that alternative. Finally, defendant asserts that even if sent to another state institution or to a federal prison, gang members in those other institutions would seek him out. Aside from the question whether he was qualified to give an opinion on this issue, the fact that there is some risk does not remove this as a reasonable alternative. The Supreme Court defined "reasonable alternative" as "a *chance* both to refuse to do the criminal act and also to avoid the harm...." *Id.* at 410, 100 S.Ct. at 635 (quoting W. LaFave & A. Scott, *Handbook on Criminal Law,* p. 379 (1972)) (emphasis supplied). If the majority is correct that the threat of some future undefined gang retaliation makes turning to the prison authority an unreasonable alternative, then it would appear to be unreasonable to incarcerate any prisoner threatened by a prison gang. We do not excuse witnesses from testifying because there is a risk that criminal defendants or their cohorts will retaliate. If we excuse prisoners from crimes they commit by reason of threats from other prisoners where the institution offers a system of protection, we greatly increase the power of the very prison gangs of which defendant complains. What gang would not be delighted to be able to tell their victims to commit the crime we demand and you'll be excused from punishment; just tell the authorities you were afraid for your personal safety and that the prison can't guarantee your future safety.

Under the majority's holding, if someone threatens a life and even though the threat is not immediate, the person threatened will be excused if he or she retaliates because society cannot guarantee that the threat will not be carried out. If we are to live in an ordered society, I believe the threatened person must take that chance and use legal means to stop the criminal from carrying out the threat. Defendant had a chance here to refuse to do the criminal act and avoid the threatened harm. He chose to commit further crimes over taking that chance. His evidence failed as a matter of law to reach the "minimum threshold" that would have

required an instruction on duress. *Bailey,* 444 U.S. at 414, 100 S.Ct. at 636–37.