77 F.3d 483
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry Curtis DAVIS, Defendant-Appellant.
 No. 95-1080.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1996.
 
 Before: MARTIN, GUY, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Jerry Davis, appeals from a mail fraud conviction. Although Davis admitted committing the acts that constituted mail fraud, he claimed he did so under duress. The district court refused to give a duress instruction, and Davis claims this was error. He also claims a two-point enhancement in his sentence for obstruction of justice was erroneously imposed.
 
 
 2
 Our review of the record convinces us that no errors occurred and we affirm.
 
 I.
 
 3
 Edward Osborne was indicted for distributing large quantities of cocaine, and, subsequent to indictment, agreed to cooperate with the police. As part of this cooperation, he indicated that he had been purchasing bogus drivers' licenses from Davis, an employee in a local Secretary of State office. To confirm that this was occurring, an undercover officer accompanied Osborne to the Secretary of State's office where Davis worked and with the help of Osborne was able to secure a driver's license bearing a false name. Osborne paid Davis $500 in return for processing the license application. The transaction between Osborne, the undercover agent, and Davis was taped, and the tape was played for the jury.
 
 
 4
 Davis's employer learned of his wrongful activities and interviewed him in the presence of a union steward in connection with possible disciplinary action. Davis was confronted with eight bogus applications that had been discovered, and readily admitted issuing all of them and several others that were not discovered as yet. Davis had been cooperating in the issuance of bogus licenses for a period of over one and one-half years. He also admitted that he was being paid to issue the licenses.
 
 
 5
 In his defense, Davis said that he felt threatened by Osborne, who carried a firearm, and that he felt that a failure to cooperate with Osborne in the issuance of the bogus licenses would result in possible harm to himself, his co-workers and his family. At trial, Davis reiterated these fears in greater detail, and also for the first time indicated that after he was paid money by Osborne, Osborne would later come back and demand that Davis return the money to him. Davis said that this occurred on every instance except the one involving Osborne and the undercover police officer.
 
 
 6
 The only defense offered at trial by Davis was duress. The trial judge denied his request for a duress jury instruction. The jury convicted Davis and this appeal followed.
 
 II.
 
 7
 It is clear that the trial judge properly declined to give a duress instruction to the jury. In United States v. Riffe, 28 F.3d 565, 569 (6th Cir.1994), we discussed the five factors that control whether a jury instruction regarding a duress defense should be given. Referencing our earlier decision in United States v. Singleton, 902 F.2d 471 (6th Cir.), cert. denied, 498 U.S. 872 (1990), we stated:
 
 Evidence must be presented:
 
 8
 (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
 
 
 9
 (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
 
 
 10
 (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
 
 
 11
 (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;
 
 
 12
 (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.
 
 
 13
 Riffe, 28 F.3d at 569 (emphasis in original)[1]
 
 
 14
 Since the alleged threats by Osborne were intermittent and occurred over a period in excess of a year and one-half, Davis is unable to meet either the third or the fifth prong of the Singleton test. The defendant had more than ample opportunity to seek the assistance of his employer or police authorities in protecting himself from what was admittedly only a perceived threat from Osborne. Although there may be situations, such as was presented in Riffe, where the danger to the person threatened was so immediate that he might be excused from seeking outside help, such is not the case here.
 
 
 15
 Defendant also argues that the instructions the court gave, after denying his request for a duress instruction, resulted in prejudicial error.
 
 
 16
 The defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: first, that the defendant knowingly and willfully devised a scheme to defraud the office of the Michigan Secretary of State of the right to his honest services by accepting bribes in exchange for processing applications for State of Michigan drivers' licenses which he knew were false; and second, that the defendant used the United States Postal Service by mailing or by causing to be mailed some matter or thing for the purpose of executing the scheme to defraud.
 
 
 17
 * * *
 
 
 18
 To act with the intention to defraud means to act knowingly and with the specific intent to deceive someone, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to oneself
 
 
 19
 * * *
 
 
 20
 Now duress or coercion is not a defense to the charge of mail fraud. In other words it is not a defense to the charge of mail fraud that the defendant was forced to commit the crime.
 
 
 21
 On the other hand it is the defendant's position that he did not intend to commit the crime, as he lacked the intent to defraud. This is a defense which you may consider in your deliberations.
 
 
 22
 (App. 495-96.)
 
 
 23
 Having correctly determined that defendant was not entitled to a duress instruction, we think the better practice would have been to say nothing about duress in the instructions. We find no prejudice, however, in the instruction given by the court. The reason duress is recognized in the law as a defense is because it vitiates the requisite specific intent necessary to commit the offense. By allowing the jury to consider intent in the context of defendant's duress theory, the trial judge allowed the defendant to "back-door" a duress instruction, albeit not in the language requested by the defendant. If any error occurred, it was harmless as a matter of law.
 
 III.
 
 24
 The obstruction of justice enhancement was imposed at the time of sentencing due to a finding by the trial judge that Davis had committed perjury during his testimony at trial. The sentencing guidelines provide in section 3C1.1 that:
 
 
 25
 If defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 26
 ....
 
 
 27
 3. The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
 
 
 28
 ....
 
 
 29
 (b) committing, suborning, or attempting to suborn perjury ...
 
 
 30
 United States Sentencing Commission, Guidelines Manual, § 3C1.1 & comment. (n. 3) (Nov. 1994).
 
 
 31
 At sentencing, the trial judge made the following findings:
 
 
 32
 THE COURT: Let me finish.
 
 
 33
 In addition to that, of course, I did hear all the tapes of the phone conversations that went on, and I must say that those tapes all indicated a friendly, cordial relationship between Mr. Osborne and Mr. Davis. There was never any hint of any fear or--on the part of Mr. Davis or any intimidation being utilized against him. Rather, as I say, the conversations were--were uniformly cordial between the two of them. It didn't seem to me that there was any appearance or any indication of a man acting in fear or under duress or under any sort of a threat.
 
 
 34
 I--it--it's my conclusion--certainly it was my conclusion from hearing the testimony that indeed the testimony was false in at least two regards: that is, the matter about Mr. Osborne paying him money but then always coming back to the Secretary of State and getting his money refunded by Mr. Davis, and also the--the testimony about the threats and the intimidation. I--I think that the testimony was--in--in the Court's estimation, the testimony was false in the--in both those regards at least.
 
 
 35
 (App. 536-37.) We conclude that these findings were amply supported by the record. When a defendant commits perjury at trial involving a material matter, a two-level enhancement is mandated. United States v. Dunnigan, 507 U.S. 87 (1993).
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 In Riffe, although setting forth the Singleton factors, we found error in the court's failure to give a duress instruction. The error found was that the court had applied prong three of the Singleton test as if it were a per se rule. The district judge did not commit that error here