**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0441n.06
Filed: May 26, 2005

Case Nos. 03-6065, 03-6066

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| DARRELL LASHUN AUSTIN, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

_____

BEFORE: SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Darrell Austin ("Austin") appeals his conviction and sentence for three counts of illegally possessing firearms pursuant to 18 U.S.C. § 922(g), arising out of two separate incidents. Austin argues that he should have been allowed to present a justification defense at trial regarding two of the counts, that there was insufficient evidence to convict him of the other count, that he deserved a sentence reduction for acceptance of responsibility, and that his case must be remanded for re-sentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005). Because we find no merit to Austin's substantive challenges, we affirm his convictions under § 922(g). Nonetheless, because Austin's sentence included at least one enhancement based on judge-found facts in violation of the Sixth Amendment according to *Booker*, we remand his case for re-sentencing.

**BACKGROUND**

**I.      The Ford Taurus Convictions**

On June 6, 2002, Memphis police pulled over a blue Ford Taurus for making an improper left turn. Austin was in the backseat of the car, and when he exited the officers noticed a firearm in plain view. Further search of the vehicle yielded a total of three firearms. The officers arrested Austin, and after signing a written waiver of his Miranda rights, Austin provided a statement admitting to the purchase of two of the three firearms. Since Austin had been previously convicted of a crime punishable by a term of imprisonment exceeding one year, he was indicted for two counts of illegal firearm possession pursuant to 18 U.S.C. § 922(g).

At trial, Austin sought to present a defense of justification to the jury, in accordance with *United States v. Singleton*, 902 F.2d 471 (6th Cir. 1990). Austin proffered that he was justified in illegally possessing the firearms because he feared for his life. Austin claimed that a gang associate, James Montgomery ("Montgomery"), ordered him to kill another man, and that when Austin refused to do so, he began receiving constant threats against his life. Austin claimed he took these threats seriously because Montgomery had killed three people eight years before. Austin claimed that he received two or three threatening phone calls every day, beginning in January 2001. On March 28, 2002, Austin was shot, allegedly in conjunction with the threats he had been receiving. In May 2002, Austin's house was, in his words, "firebombed."[1] Austin claimed that he complained to the police regarding the threats when he was shot, when his house was "firebombed," and when he was arrested, but the threats continued.

The district court refused to instruct the jury on justification, principally on the ground that Austin's proffer did not provide sufficient evidence for a jury to find that the threat to him was

---

[1]The government describes this incident as a small fire at Austin's back door, which was caused by the throwing of a beer bottle containing some accelerant, and which was extinguished relatively quickly.

2

"present, imminent, and impending," as required by *Singleton*. The jury found Austin guilty of both counts of illegal firearm possession.

## II.    The Corned Beef House Conviction

On August 16, 2002, officers from local and federal agencies carried out a plan to arrest Austin pursuant to a felony federal arrest warrant. The officers set up surveillance near the Corned Beef House in Memphis, Tennessee, where they expected Austin to arrive. Austin entered the building, and Officer Rodger Nelson ("Officer Nelson"), a member of the team executing Austin's arrest warrant, observed Austin pulling up his shirt, pulling out a weapon, turning, and running down a hallway. Officer Nelson made his observations through a plate-glass window from eight to ten feet away. After arresting Austin, Officer Nelson found a firearm in a trash can in the hallway where he had seen Austin flee. Based on this firearm and Officer Nelson's observations, a jury convicted Austin of one count of illegal firearm possession under 18 U.S.C. § 922(g).

## III.    Sentencing

Austin was sentenced for all three § 922(g) convictions in a single proceeding. The district court found Austin to be an Armed Career Criminal under U.S.S.G. § 4B1.4, which required a minimum offense level of 33. The district court also found that, in the events underlying the Corned Beef House conviction, Austin had used the firearm in connection with a controlled substance offense. The court therefore raised his offense level to a 34 pursuant to U.S.S.G. § 4B1.4(b)(3)(A). At no time did Austin object to his not receiving an adjustment for acceptance of responsibility, and he explicitly disclaimed any objection to his being classified as an Armed Career Criminal. He did, however, object to the one-point enhancement under § 4B1.4(b)(3)(A). Austin's

3

offense level of 34 resulted in a guideline range of 262-327 months' imprisonment, and the district court sentenced Austin to 312 months' imprisonment.

## ANALYSIS

### I.   Justification

Austin claims the district court erred by refusing to allow him to present a justification defense to the jury regarding his possessing the firearms in the Ford Taurus.  We have held that "a jury instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation, [but] so long as there is even weak supporting evidence, [a] trial court commits reversible error in a criminal case when it fails to give an adequate presentation of a theory of defense."  *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993) (internal quotations and citations omitted).

In *United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990), this court adopted five factors that control whether a jury instruction presenting a justification defense should be given. The evidence must show:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;
>
> (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

4

*United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994) (quoting *Newcomb*, 6 F.3d at 1134-35) (emphasis omitted).

The district court relied on *Singleton*'s first factor in refusing to give an instruction on the defense of justification, ruling that Austin had not proffered sufficient evidence of a "present, imminent, and impending threat." We agree. Even assuming the truth of Austin's proffer that he received threatening phone calls continuously for over a year, that he was shot in March 2002, and that his house was firebombed in May 2002, these events are too remote in time to justify his possessing firearms on June 6, 2002. *See United States v. Rice*, 214 F.3d 1295, 1297-98 (11th Cir. 2000) (finding imminence requirement not met where defendant obtained a firearm after more than a year of beatings and specific threats by a local gang); *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996) (finding no imminence when defendant, fearing robbery by individuals lurking outside his apartment, carried a weapon with him when he left, and stating that "[t]he defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened"); *cf. Newcomb*, 6 F.3d at 1138 (finding sufficient evidence of imminence when defendant disarmed his girlfriend's son who was at that very moment threatening to kill someone, and then possessed the weaponry for mere "moments" afterwards).

Furthermore, even were we to find that Austin faced an imminent threat, we think it unlikely he could satisfy *Singleton*'s other requirements for a justification defense. To merit a justification defense, the defendant must have "no reasonable, legal alternative to violating the law." *Riffe*, 28 F.3d at 569 (emphasis omitted). Austin could have avoided the alleged threats by not associating with the criminal gang in the first place, or he could have worked more closely with the police to

provide information about the gang so that they could resolve the problem. In a similar vein, Austin also "recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct" by continuing to consort with dangerous gang members.[2] *See id.* Moreover, it is difficult to see how a "direct causal relationship" exists "between the criminal action taken and the avoidance of the threatened harm," *see id.*, when Austin illegally possessed two firearms in the Ford Taurus, not just one. Finally, Austin maintained the "illegal conduct . . . longer than absolutely necessary" because he possessed firearms one month after the firebombing at his house, in response to no new extraordinary threats. *See id.* Therefore, the district court was correct in refusing to allow Austin to present a justification defense.

## II.     Sufficiency of the Evidence

Austin argues that the evidence that he possessed an illegal firearm at the Corned Beef House was insufficient to sustain his § 922(g) conviction. We disagree. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Kelly*, 204 F.3d 652, 656 (6th Cir. 2000) (internal quotation omitted). Clearly the government's evidence of unlawful possession meets this low bar. Officer Nelson testified that he observed Austin with a weapon from eight to ten feet away, through a plate-glass window, before Austin fled down a hallway. When the police arrested Austin, they found the gun in question in a trash can in the hallway down which Austin ran. Austin's only rebuttal testimony is from a gang accomplice, *see supra* note 2, who testified that he did not see Austin with a gun at the Corned Beef House, but

---

[2]It did not escape our notice that Austin's primary witness in the Corned Beef House case, Tarrance Carruthers, was apparently a member of Montgomery's gang, and even a co-defendant in a criminal trial with Montgomery. It is clear then that Austin was freely associating with criminal gang members two months after he claims that very gang was presenting an imminent threat requiring that he illegally arm himself.

admitted that for some period of time after the police arrived at the restaurant, he could not see Austin at all. The government's evidence, taken in its most favorable light, was clearly sufficient to sustain Austin's conviction.

## III.    Sentencing

Austin argues that his sentence violated the Sixth Amendment under *United States v. Booker*, 125 S. Ct. 738 (2005). In *Booker*, the Supreme Court held that the mandatory federal sentencing guidelines violated the Sixth Amendment by requiring judges to enhance the sentences of defendants based on facts not found by a jury or admitted by the defendant. To remedy this problem, the Court excised from the Sentencing Act the provisions making the guidelines mandatory. *Booker* then instructed reviewing courts to apply its Sixth Amendment holding and its remedial interpretation of the Sentencing Act to all cases on direct review. *Id.* at 769. *Booker* further mandated that reviewing courts apply ordinary prudential doctrines, such as plain error review, to determine if re-sentencing is warranted. *Id.*

The district court determined that, based on Austin's past felony convictions, he qualified as Armed Career Criminal pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, a finding that Austin explicitly refused to challenge at sentencing. As such, Austin automatically had an offense level of 33, which the district court increased to a 34 based on the court's finding that Austin possessed the firearm in connection with a controlled substance offense. *See* U.S.S.G. § 4B1.4(b)(3)(A). This one-level enhancement based on judge-found facts, in a context where the sentencing guidelines were mandatory, violates the Sixth Amendment under *Booker*. Since Austin failed to make a Sixth Amendment objection at sentencing, however, we conduct plain error review to determine if he must be re-sentenced. Under that test, there must be (1) error, (2) that is plain,

7

(3) and that affects substantial rights. *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005). If these three conditions are met, an appellate court may then exercise its discretion to notice the forfeited error if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Austin's sentence in violation of the Sixth Amendment constitutes error that is plain. *Id.* at 378-79. Moreover, according to this circuit's precedent in *United States v. Oliver*, a sentence enhancement based on judge-found facts under a mandatory guidelines system necessarily affects Austin's substantial rights.[3] *Id.* at 379-80. Finally, *Oliver* dictates that any sentencing error that results in the imposition of a more severe sentence than is supported by the jury verdict and thus violates the Sixth Amendment, automatically diminishes the integrity and reputation of the judicial system. *Id.* at 380. Therefore, Austin's case must be remanded for re-sentencing.[4]

## CONCLUSION

[3]Speaking only for myself, I note my disagreement with *Oliver*'s unwarranted departure from traditional plain error review. Despite purporting to apply plain error review, *Oliver* fails even to discuss, much less enforce, the defendant's traditional burden of proving that the district court's error prejudiced him. *Oliver* reasoned that since the defendant received a sentence "beyond that which was supported by the jury verdict and [his] criminal history," he was necessarily prejudiced because he "*arguably* received a sentence that was longer than his sentence would have been absent a Sixth Amendment violation." *Oliver*, 397 F.3d at 379-80 (emphasis added). "Arguably" is not enough, however. Under the ordinary plain error review that *Booker* requires, 125 S. Ct. at 769, a defendant bears the burden of proving that he was prejudiced by the error, *United States v. Olano*, 507 U.S. 725, 734 (1993): i.e., that absent that error, he would more likely than not have received a lower sentence. By simply ignoring this requirement, *Oliver* effectively holds that every Sixth Amendment violation in a *Booker*-type case automatically prejudices a defendant, a holding that does not comport with Supreme Court precedent.

[4]Austin argues in a pro se brief that he should receive a reduction in offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, because he admitted possessing the firearms in the Ford Taurus. This issue is mooted by our determination that Austin is entitled to re-sentencing under *Booker*, but we note that nothing on the record before us indicates that Austin is entitled to such a reduction. Despite Austin's admitting that he possessed the firearms (after the police had already found them), he has never ceased claiming that he was legally justified in doing so. Moreover, when multiple counts of a conviction are combined for sentencing, the defendant must accept responsibility for all counts to warrant a reduction, *United States v. Chambers*, 195 F.3d 274, 278-79 (6th Cir. 1999), and Austin maintains in this very appeal that he was not guilty of illegally possessing the firearm at the Corned Beef House. And that he was found guilty of that crime, which occurred two months after the Ford Taurus firearms possession, further shows that Austin did not accept responsibility for his criminal firearm possession. *See, e.g.*, U.S.S.G. § 3E1.1, comment. (n. 1(b), 1(g)).

For the foregoing reasons, we **AFFIRM** Austin's convictions, but **REMAND** his case for re-sentencing.