**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0454n.06**
**Filed: May 31, 2005**

**Case No. 03-5735**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ROGER CLAYTON WHITE, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SILER, BATCHELDER, and ROGERS, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** We filed our initial opinion in this case on

January 12, 2005. On that same day, the Supreme Court issued its decision in *United States v.*

*Booker*, 125 S. Ct. 738 (2005), which held that the mandatory federal sentencing guidelines violated

the Sixth Amendment. Because *Booker* affects the analysis in this case, we granted panel rehearing,

and now issue this revised opinion, which differs from our initial opinion only with regard to our

analysis of the sentencing issues.

Roger Clayton White ["White"] appeals his conviction under 18 U.S.C. §§2113(a) & (d) of

bank robbery by force, violence and intimidation and his conviction under 18 U.S.C. §922(k) of

possessing a firearm with the manufacturer's serial number obliterated. White argues that his

conviction must be reversed because the district court erred in refusing to instruct the jury on the

defense of duress. White also argues that his sentence violated the Sixth Amendment in light of

*Booker*. Because White had opportunities to extricate himself from the robbery and did not do so, we find that he was not entitled to a jury instruction on duress, and we affirm his conviction. Because White's sentence was based, in part, on judge-found facts in violation of the Sixth Amendment, however, we remand his case for re-sentencing.

## BACKGROUND

On April 17, 2002, White's brother Jeffrey White ["Jeffrey"]and Jeffrey's friend Laurie Ann Fischer ["Fischer"], robbed the Maysville Security Bank & Trust Company at gunpoint. White acted as the getaway driver, waiting outside the bank in the adjoining parking lot of the Best Western Hotel in a white car that he had rented for the robbery, armed with a 9mm rifle. Fischer and Jeffrey escaped in White's rented car with over $100,000 in cash.

Shortly after driving Jeffrey and Fischer away from the bank, White encountered police officers in a police cruiser. White later testified that he "was going to stop," but Jeffrey pointed a gun at him and told him to "[m]ove it." A high speed chase ensued, ending when White crashed his car into a roadblock, and the car burst into flames. Jeffrey committed suicide in the car. White got out of the car and walked over to Maysville Police Detective Justin Horch, who testified at trial that after he read White his Miranda rights, White said, "Boy, that was stupid. Boy, that was stupid . . . . How much time am I going to get?" Det. Horch also testified that White said he hit the roadblock in an attempt to kill himself. White did not tell Det. Horch that he had been threatened in any way or induced to participate in the criminal venture.

Two weeks later, FBI agent Brian Smith ["Smith"] interviewed White, who was accompanied by counsel. Smith testified that White said Jeffrey had threatened him while they were

2

driving to the bank to commit the robbery, saying, "if you leave us in the bank you're a dead man." Smith testified that White did not mention any other threats.

At trial, White claimed that he became involved in the bank robbery because Jeffery and Fischer had threatened to kill him or members of his family, or to have them killed by a mafia-connected friend, if he did not participate. White admitted, however, that the evening before the robbery he was permitted to leave the hotel room by himself in order to make a phone call, the morning of the robbery he checked out of the hotel and went to get coffee by himself, and he had dropped Jeffrey and Fischer off a block from the bank and was alone during the entire time the robbery was being committed, and could have contacted the police at any of those times.

Fischer testified at trial that White wanted to participate in the robbery because he was between $14,000 and $16,000 in arrears in child support payments—a figure corroborated by an appropriate state official at trial—and he was at risk of jail time if he did not pay the debt immediately. According to Fischer, White drew a map of the interior of the bank in mid-March, participated in the planning of the robbery during the week prior to its execution, rented the white car used for the robbery from Quality Leasing in Portsmouth, Ohio, on April 15, 2002, and the day before the robbery, rented a room for the three of them at a Ramada Inn near the bank. Fischer testified that on that evening, White was away from them for about an hour to make a phone call and to get something to eat from Wendy's, and on the morning of the robbery, White checked out of the hotel and went for coffee by himself. Finally, Fischer testified that while she and Jeffrey were putting on their disguises in the hotel room, White left the hotel in order to survey the activity at the police station.

3

At the conclusion of the trial, White requested that the jury be instructed on the defense of duress. Judge Bunning denied the request, finding as a matter of law that "the defendant has failed to establish an entitlement to a duress instruction because he has failed to prove . . . that he had no opportunity to avoid the danger and that he surrendered once the threat abated." The jury found White guilty of armed bank robbery and possessing a firearm with obliterated serial numbers, and White was sentenced to 264 months' imprisonment on the bank robbery count and a concurrent 60 months on the firearm count. White timely appealed.

## ANALYSIS

### I.   Duress

A district court judge's refusal to give requested jury instructions is reversible error only if "(1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993). A defendant requesting an instruction "has a preliminary burden to introduce some evidence to trigger consideration of the defense, although that burden is not a heavy one . . . ." *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994). "Although a jury instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation, so long as there is even weak supporting evidence, [a] trial court commits reversible error in a criminal case when it fails to give an adequate presentation of a theory of defense." *Newcomb*, 6 F.3d at 1132 (internal quotations and citations omitted).

In *Riffe*, we reviewed the five factors adopted by this circuit in *United States v. Singleton*, 902 F.2d 471 (6th Cir. 1990), that control whether a district court judge should instruct a jury on a

4

duress defense. In particular, we discussed the third factor, which requires that the defendant show "that [he] had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm." *Riffe*, 28 F.3d at 569 (quoting *Newcomb*, 6 F.3d at 1134-35) (emphasis omitted). In *Newcomb*, we recognized *Singleton*'s point that "the keystone of the analysis is that the defendant must have no alternative–either before or during the event–to avoid violating the law." *Newcomb*, 6 F.3d at 1135 (quoting *Singleton*, 902 F.2d at 473).

The record here demonstrates that White had a reasonable, legal alternative to participating in the robbery. The district court rightly noted that "there was no proof that [White] was in the constant company of his alleged coercers, Jeffrey White and Laurie Fischer, in the days, weeks and hours prior to the robbery." Indeed, White admitted that he was alone at least twice on the morning of the robbery, and for some period on the evening before the robbery. Notably, his stated reason for having been allowed to leave the hotel room on the evening before robbery was to make a phone call, which would seem to have been the ideal opportunity to make contact with the police, had he been of a mind to.

Not only did White have the opportunity to contact the police, evidence suggests contacting the police would have alleviated any threat of death or serious bodily injury to White or his family. The evidence supported a concrete fear of death or injury only from Jeffrey or Fischer. Once arrested, Jeffrey and Fischer could not have harmed White or his family. The record contains no evidence, other than White's own speculation, that there was a mafia-connected individual who would in any way harm White or his family. We find no error in the district court's conclusion that White was not entitled to a jury instruction on duress.

## II.     Sentencing

5

White also challenges the constitutionality of his sentence in light of *United States v. Booker*, 125 S. Ct. 738 (2005). In *Booker*, the Supreme Court held that the mandatory federal sentencing guidelines violated the Sixth Amendment by requiring judges to enhance the sentences of defendants based on facts not found by a jury or admitted by the defendant. To remedy this problem, the Court excised from the Sentencing Act the provisions making the guidelines mandatory. *Booker* then instructed reviewing courts to apply its Sixth Amendment holding and its remedial interpretation of the Sentencing Act to all cases on direct review. *Id.* at 769. *Booker* further mandated that reviewing courts apply ordinary prudential doctrines, such as plain error review, to determine if re-sentencing is warranted. *Id.*

White's sentence was enhanced, pursuant to the mandatory federal sentencing guidelines in place at the time, based on facts found by the sentencing judge. The judge enhanced White's offense level by 16 points because he found that White discharged a firearm in the course of the offense; caused a loss that was more than $50,000 but less than $250,000; created a substantial risk of bodily injury to another person during flight; recklessly endangered another person during flight; and obstructed justice. Thus, White's sentence violates the Sixth Amendment under *Booker*. Since White failed to make a Sixth Amendment objection at sentencing, however, we conduct plain error review to determine if he must be re-sentenced. Under that test, there must be (1) error, (2) that is plain, (3) and that affects substantial rights. *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005). If these three conditions are met, an appellate court may then exercise its discretion to notice the forfeited error if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

6

White's sentence in violation of the Sixth Amendment constitutes error that is plain. *Id.* at 378-79. Moreover, according to this circuit's precedent in *United States v. Oliver*, a sentence enhancement based on judge-found facts under a mandatory guidelines system necessarily affects White's substantial rights.[1] *Id.* at 379-80. Finally, *Oliver* dictates that any sentencing error that leads to a violation of the Sixth Amendment by imposing a more severe sentence than is supported by the jury verdict automatically diminishes the integrity and reputation of the judicial system. *Id.* at 380. Therefore, White's case must be remanded for re-sentencing.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** White's conviction, but **REMAND** his case for re-sentencing in accordance with *Booker*.

---

[1]Speaking only for myself, I note my disagreement with *Oliver*'s unwarranted departure from traditional plain error review. Despite purporting to apply plain error review, *Oliver* fails even to discuss, much less enforce, the defendant's traditional burden of proving that the district court's error prejudiced him. *Oliver* reasoned that since the defendant received a sentence "beyond that which was supported by the jury verdict and [his] criminal history," he was necessarily prejudiced because he "*arguably* received a sentence that was longer than his sentence would have been absent a Sixth Amendment violation." *Oliver*, 397 F.3d at 379-80 (emphasis added). "Arguably" is not enough, however. Under the ordinary plain error review that *Booker* requires, 125 S. Ct. at 769, a defendant bears the burden of proving that he was prejudiced by the error, *United States v. Olano*, 507 U.S. 725, 734 (1993): i.e., that absent that error, he would more likely than not have received a lower sentence. By simply ignoring this requirement, *Oliver* effectively holds that every Sixth Amendment violation in a *Booker*-type case automatically prejudices a defendant, a holding that does not comport with Supreme Court precedent.