*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0329p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-5611

TERANCE JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 01-20247—Bernice B. Donald, District Judge.

Argued: April 18, 2005

Decided and Filed: August 5, 2005

Before: BOGGS, Chief Judge; RYAN and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Robert L. Hutton, GLANKLER BROWN, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. Steven J. Mulroy, CECIL C. HUMPHREYS SCHOOL OF LAW, UNIVERSITY OF MEMPHIS, Memphis, Tennessee, for Amicus Curiae. **ON BRIEF:** Robert L. Hutton, GLANKLER BROWN, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. Steven J. Mulroy, CECIL C. HUMPHREYS SCHOOL OF LAW, UNIVERSITY OF MEMPHIS, Memphis, Tennessee, Wade V. Davies, RITCHIE, FELS & DILLARD, Knoxville, Tennessee, for Amicus Curiae.

_____

## OPINION

_____

RYAN, Circuit Judge. The defendant, Terance Johnson, appeals the district court's *in limine* ruling denying him the opportunity to present a duress defense to the charges against him for participating in an armed bank robbery in which a person was killed. Following this adverse ruling, Johnson entered a plea of guilty, conditioned on his being allowed to file this appeal.

We will AFFIRM.

Johnson was charged with: (1) bank robbery, 18 U.S.C. § 2113(a); (2) killing a person in the course of a bank robbery, 18 U.S.C. § 2113(e); (3) carrying, using, brandishing, and discharging

1

a firearm in connection with a crime of violence, 18 U.S.C. § 924(c); and (4) killing another person in connection with a violation of 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(j).

The district court held that:  (1) the defense of duress is not available, as a matter of law, to a charge of killing a person in the course of a bank robbery, sometimes informally called federal felony murder; and (2) even if it were, Johnson had not made out a *prima facie* case of duress.  The first issue is one of first impression in this circuit, but we need not reach it, because we agree that, even if duress had been a defense available to Johnson, he failed to make out a *prima facie* case of duress, sufficient to entitle him to present the issue to the jury.

In bypassing the issue of the general availability of the duress defense to charges under 18 U.S.C. §§ 924(j) and 2113(e), we do not wish to be understood as agreeing or disagreeing with the district court's ruling on the matter; we simply do not reach it.  But we do agree with the district court that the evidence proffered by Johnson as tending to prove his mental retardation is not relevant to whether he made out a *prima facie* case of duress.

## I.

Early in the morning of July 23, 2001, Aaron Haynes and William Maxwell, who later in the day became Johnson's accomplices, decided to rob the Union Planters Bank in Memphis, Tennessee.  While surveilling the bank in preparation for the robbery, Haynes and Maxwell entered the bank and encountered security guard James Jones.  Fearing that Jones would recognize them when, later, they returned for the robbery, Haynes and Maxwell decided to enlist Johnson to participate in the robbery, primarily to shoot Jones.  Haynes and Maxwell went to Johnson's home and roused him from bed.  Johnson was not immediately told of the robbery plan; instead, Haynes and Maxwell told Johnson to come with them to "go smoke some marijuana and mess with some girls."

According to Johnson's testimony at the *in limine* hearing prior to his conditional guilty plea, as the trio were traveling to the bank in Haynes's car, Haynes told Johnson that he was to enter the bank and shoot the security guard, and that if Johnson did not do so, Haynes would kill him.  Haynes handed Johnson a pistol.  Haynes, now unarmed, explained that he would take the security guard's pistol after Johnson had shot him.  In addition, Haynes and Maxwell agreed that each of them would shoot a person in the bank during the course of the robbery, although Johnson claimed to be unaware of this latter agreement.

Haynes and Maxwell dropped Johnson off near the entrance to the bank building, and then drove around the corner to the bank parking lot.  Johnson immediately entered the bank and, noticing Jones standing just inside the vestibule, turned his back to Jones and stood looking out the front door, apparently waiting for Haynes and Maxwell to appear.  Before Haynes and Maxwell entered the bank, Johnson turned and shot Jones in the mouth.  The impact knocked Jones down, but did not kill him.  Haynes and Maxwell then entered the bank.  Haynes took Jones's gun and chased a bank customer, Sheryl Lynn White, to the desk area of the bank, where Haynes shot and killed her.

Maxwell jumped over the teller counter and took cash from the bank drawers.  The three men then left the scene and drove to Maxwell's girlfriend's house where they divided the stolen money, and then went their separate ways.  Later the same day, the trio met at a motel room Haynes had rented.  According to Johnson, the three drank beer, smoked marijuana, and "celebrated."  All three were arrested within two days.

After Johnson was indicted, his counsel arranged for a psychological evaluation of his client at Vanderbilt University.  The reports of the evaluations revealed that Johnson had an extensively documented history of mental retardation and had a current I.Q. of 66.  Johnson's counsel did not interpose a defense of insanity or mental incompetency.

Before trial, the government filed a motion *in limine* to preclude Johnson from raising any defense of duress at trial, claiming the defense is unavailable in a homicide case. The court held that duress is unavailable as a matter of law to charges under 18 U.S.C. §§ 924(j) and 2113(e), which are essentially felony murder charges. As we have said, we decline to address this issue because the district court also held, in the alternative, that the defendant had not made a *prima facie* showing of duress and was therefore barred from presenting any evidence of duress to the jury. The court reasoned that, because duress is evaluated under an objective standard, that is, a reasonable person standard, Johnson's mental retardation was irrelevant to the legal inquiry of whether Johnson had established a *prima facie* case of duress. The court also ruled that the defendant could not present any expert psychiatric testimony as to his mental retardation in support of a duress defense.

Following this adverse ruling, Johnson entered a conditional plea of guilty to all counts. The terms of the plea agreement provide that Johnson may withdraw his guilty pleas if the district court's ruling on the motion *in limine* is set aside on appeal.

## II.

"In a criminal case it is reversible error for a trial Judge to refuse to present adequately a defendant's theory of defense." *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976). Where a defendant claims an affirmative defense, and that "defense finds some support in the evidence and in the law," the defendant is entitled to have the claimed defense discussed in the jury instructions. *Id.* This "burden is not a heavy one," *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994), and is met "[e]ven when the supporting evidence is weak or of doubtful credibility . . . ." *Garner*, 529 F.2d at 970.

Accordingly, if "the testimony given or proffered meet[s] a minimum standard as to each element of the defense . . . of duress," assuming the defense is available as a matter of law, a trial judge may not take the question of duress away from the jury. *United States v. Bailey*, 444 U.S. 394, 415 (1980); *see also Riffe*, 28 F.3d at 570.

Just as this relaxed standard logically flows from the right of trial by jury, so too does a trial judge's duty to require a *prima facie* showing by the defendant that he can produce evidence on each of the elements of the defense. A trial judge does not "invade" the province of the jury when determining, as a preliminary matter, whether a defendant has met the burden of introducing sufficient evidence on each of the elements of an asserted defense; here, duress.

Where "an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *Bailey*, 444 U.S. at 416. Therefore, where the evidence is insufficient as a matter of law to support a duress defense, a trial judge should exclude that evidence. *United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984). When, as in this case, the issue is raised in a pretrial motion, the rule is to be applied just the same: if the defendant's proffered evidence is legally insufficient to support a duress defense, the trial judge should not allow its presentation to the jury. *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990) (citing Fed. R. Crim. P. 12(b)); *see United States v. Campbell*, 675 F.2d 815, 819-21 (6th Cir. 1982).

Whether a defendant has established a *prima facie* case of duress is a question of law, and on review, we consider it *de novo*. *United States v. Jankowski*, 194 F.3d 878, 882 (8th Cir. 1999); *United States v. Moreno*, 102 F.3d 994, 997 (9th Cir. 1996). To state a *prima facie* case of duress, a defendant must offer some evidence in support of each of the following five elements:

(1)      that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

(2)      that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3)      *that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm*;

(4)      that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;

(5)      that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Riffe*, 28 F.3d at 569 (emphasis in original).

We agree with the district court that Johnson, at a minimum, failed to present even weak evidence that he had no reasonable legal alternative to participating in the robbery. When Johnson entered the bank, he was alone. He stood inside the bank entrance, with his back to the security guard, facing toward the street, waiting for Haynes and Maxwell to appear. Although the record does not disclose exactly how long Johnson stood in that position, it is clear that sufficient time elapsed between Johnson's entry into the bank, and the subsequent entry of Haynes and Maxwell, that Johnson had a "reasonable, legal alternative" to shooting Jones, the security guard. Johnson could have warned Jones of the impending robbery, handed over his gun to Jones, or told Jones to lock the door. From the moment Johnson was let out of the car by Haynes, who drove off to park the vehicle, and certainly when Johnson entered the bank alone, encountered Jones, then turned his back on Jones, and waited for Haynes and Maxwell, he could have extricated himself from the plan, and should reasonably be expected to have done so. Johnson's failure to proffer any competent evidence that he had "no reasonable, legal alternative" to shooting Jones and participating in the robbery was fatal to his showing a *prima facie* case and precluded the presentation of a duress defense. *See Bailey*, 444 U.S. at 415; *see also Moreno*, 102 F.3d at 997.

But Johnson argues that he should not have been held to a reasonable person standard on the element of having "no reasonable, legal alternative to violating the law," but rather to a reasonable *retarded* person standard. In support, Johnson argues that the common law has always recognized that persons with physical disabilities are judged by standards that take into account their physical disabilities. For example, a blind person, Johnson argues, is held to the standard of a reasonable blind person. Johnson asserts that mental retardation is a "physical debilitation, not a psychological one." Brief of Defendant-Appellant at 29. Therefore, he argues, his limited ability to reason and to form judgments must be considered in determining whether he could have thought of alternatives to participating in the robbery. We do not agree.

First, we do not accept that mental retardation is a "physical debilitation" akin to tangible, verifiable, physical disabilities such as blindness, deafness, partial paralysis, a missing limb, or the like. Unlike such easily verifiable non-mental physical disabilities, mental deficiency or retardation is difficult to identify, more difficult to quantify, and more easily feigned. For these reasons and others, it was the common law rule going back at least to 1616, and still is, that an adult suffering from a mental deficiency is nevertheless held to a reasonable person standard. *See* Restatement (Second) of Torts § 283B cmt. b. (1965). And the rule is no different when the reasonable person standard is material to a defense proffered in a criminal prosecution. The law does recognize that

a mental defect may defeat culpability. Certainly, in the case of a gross mental defect of some kinds, a defendant may be able to avail himself of an insanity or diminished capacity defense, but that is not the defense Johnson claims.

Second, Johnson's "reasonable retarded person" standard is unknown to our criminal jurisprudence, state or federal, and cannot coexist with the well settled reasonable person standard. This "standard" would provide no ascertainable boundary and would instead collapse into a subjective, individualized inquiry in each case as to whether the defendant had a reasonable person's ability to reason. It would require courts and juries to determine a defendant's subjective state of mind. In this case, for example, it would be difficult to formulate a standard that did not amount to charging a judge and jury with the impossible task of determining which alternatives Johnson actually considered before he shot the security guard and participated in the robbery. A subjective standard, and the mind reading it requires, amounts to no workable standard at all. For that reason, we judge Johnson's failure to take appropriate alternative action to shooting Jones and continuing to participate in the bank robbery by what a reasonable person would be expected to do. Mental retardation is not part of that calculus.

### III.

We think the district court properly excluded the defendant's proffered evidence of mental deficiency on the issue of the sufficiency of his *prima facie* showing that he had "no reasonable, legal alternative" to shooting security guard Jones and participating in the bank robbery.

For the foregoing reasons, we **AFFIRM** the district court's *in limine* ruling.