NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0681n.06

No. 11-5347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 26, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                    )
                                             )     **ON APPEAL** FROM THE
    **Plaintiff-Appellee,**                )     UNITED STATES DISTRICT
                                             )     COURT FOR THE WESTERN
v.                                           )     DISTRICT OF TENNESSEE
                                             )
JERRY LYNN CLARK, JR.,                       )     **O P I N I O N**
                                             )
    **Defendant-Appellant.**              )


BEFORE: NORRIS, CLAY and GRIFFIN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Jerry Lynn Clark appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He also appeals the procedural reasonableness of his sentence. We hold that the district court erred by refusing to grant Clark's requested jury instruction on justification. We therefore reverse and vacate the conviction.

**I.**

Clark's prosecution stemmed from an evening in Paris, Tennessee, that went terribly wrong. On the night of February 12, 2010, Clark and a companion, Marecia Stephenson, accepted an invitation from Stephenson's mother to join her at Club 20/20 Bar & Grille. Shortly after Clark and Stephenson arrived and joined her mother, Stephenson saw some friends on the other side of the crowded dance floor. She walked across the dance floor, spoke with her friends for a few minutes, and then walked back to Clark and her mother. On this second trip across the dance floor, a man

whom Stephenson did not know clutched her buttocks. This man was with a large group that Stephenson did not recognize as being from the town of Paris. She said they also stood out because "they were like all in a group and everybody else was kind of sprawled out throughout the club."

Clark's trouble began when he confronted the man who had assaulted Stephenson. He told the man not to touch her. The assailant "didn't care," and was immediately joined by the large group of men that accompanied him. They crowded around Clark and Stephenson, and other club patrons crowded around as well to see what was going on. At this point, Clark realized that he might be in trouble. As he began to back up, the man put his hand on Clark's chest, and Clark pushed it away. In the middle of the verbal exchange between Clark and the assailant, the music in the club went silent, the house lights were turned on, and the proprietor began ushering people towards the door. Some of the 17 to 20 men who accompanied the assailant left, but others remained to confront Clark. Clark was unable to leave because he was surrounded by the men. Stephenson refused to leave Clark's side for fear that the men would "jump on him." Eventually, the proprietor successfully ushered Clark and the group of men out the door. Stephenson followed, and as she left saw a man holding a gun run past her. By the time Stephenson got out of the club, she heard gunshots.

Once Clark had been ushered outside, he had started to walk toward his car when he saw the assailant. The man had his hand in his jacket, told his companions to "get the car ready," and approached Clark. Correctly assuming that the man had a gun in his jacket, Clark ducked just as the man shot at him twice. Clark felt the first bullet whiz past his neck and started running toward the club. As he ducked behind a vehicle, he saw some people running back into the club, and followed them in. Clark then looked himself over to make sure that he was not shot.

Inside the club, Clark did not feel safe. "I was thinking maybe like he can probably come in and wasn't no where for me to go in there, you know. And there was—a pretty serious situation. I didn't want to be in the club, I just didn't want to," Clark testified. As he started to leave the club, he encountered the club's DJ, Maurquice Tharpe. Mr. Tharpe lifted his shirt revealing a gun, and told Clark to take it, which he did. Once outside on the crowded street, he saw the man who had shot at him. Clark tried to blend in with the crowd, and as he started walking away, was approached by an acquaintance who tried to usher him out of the area more quickly. That was when the police arrived.

Clark was headed toward his car when he was approached by two police officers, including Officer Jamie James. Officer James had encountered Clark earlier in the evening when he was the passenger in a vehicle that was the subject of a traffic stop. After the traffic stop, Officer James discovered that Clark had an outstanding arrest warrant in Kentucky. When James encountered Clark outside of Club 20/20, he placed Clark under arrest. Clark told the officers that he was carrying a gun. They retrieved a Colt Python 357, loaded with six, 38 special hollow point rounds, from Clark's waistband.

Clark's possession of the weapon triggered this prosecution because Clark had previously been convicted of two Tennessee felonies. Clark did not contest that he possessed the gun—in fact he testified that he did accept the gun offered by Mr. Tharpe. Clark's entire defense rested on the argument that his possession of the gun was justified. The district court allowed Clark to present evidence supporting justification, but subsequently held that the defense had not made a prima facie case for justification and refused to instruct the jury on the defense. Instead, the court included an

instruction requested by the government, telling the jury to disregard "testimony in which [the defense] contends that [Clark] possessed the firearm because of self defense or because he was shot at . . . ."

The jury convicted Clark of being a felon in possession of a firearm under 18 U.S.C. § 922(g). The court calculated a guidelines range of 120 to 150 months and sentenced Clark to the low end of the range, 120 months, with two years of supervised release. In addition to his conviction, Clark appeals the procedural reasonableness of his sentence. Because we reverse his conviction, we need not consider his challenge to the sentence.

## II.

"In a criminal case it is reversible error for a trial Judge to refuse to present adequately a defendant's theory of defense." *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976). "Where a defendant claims an affirmative defense, and that defense finds some support in the evidence and in the law, the defendant is entitled to have the claimed defense discussed in the jury instructions. This burden is not a heavy one, and is met even when the supporting evidence is weak or of doubtful credibility." *United States v. Johnson*, 416 F.3d 464, 467 (6th Cir. 2005) (internal quotations and citations omitted).

"We review the jury charge as a whole to determine whether it fairly and adequately submitted the issues and the law to the jury. Refusal to give an accurate instruction is reversible if it impairs the defendant's theory of the case and is not covered adequately by the instructions given." *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994) (internal quotations and citations omitted).

Whether the defendant has made a prima facie case for an affirmative defense is a question of law, which we review *de novo*. *Johnson*, 416 F.3d at 468.

**III.**

This court has clearly laid out the elements of justification.[1] In order to avoid liability for a crime because the act was justified, a criminal defendant must satisfy the test adopted in *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990); *see also United States v. Newcomb*, 6 F.3d 1129, 1134—35 (6th Cir. 1993). The elements of justification are:

> (1) "that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," *Singleton*, 902 F.2d at 472 (quotations marks omitted);
> (2) "that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct," *id.* (quotations marks omitted);
> (3) "that defendant had no reasonable legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm," *id.* (quotations omitted);
> (4) "that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm," *id.* (quotation marks omitted); and
> (5) that defendant "did not maintain the illegal conduct any longer than absolutely necessary." *Newcomb*, 6 F.3d at 1135.

To present a prima facie case, Clark need not prove any of the five elements, only demonstrate that each could find "some support." *Johnson*, 416 F.3d at 467. This support may even be "weak or of doubtful credibility." *Id.* (quoting *Garner*, 529 F.2d at 970).

---

[1] The parties, the district court, and prior decisions from this court are inconsistent in how they refer to the affirmative defense sought by Clark. The defense is variously referred to as "necessity," "justification," "coercion," and "duress." Because the Sixth Circuit Pattern jury instructions for Coercion/Duress (6.05) and the requested jury instruction for Justification (6.07) are identical, the inconsistencies in terminology are inconsequential.

As for the first factor, Clark presented evidence that he faced an imminent danger of death or serious injury. He had been threatened by the men and one of them shot at him, after which he ran back into the club for safety, then left again because he feared being cornered in the club. A jury could conclude he was reasonably afraid that he would be assaulted or shot at again by assailants still in the area.

Clark has also presented a prima facie showing that he did not recklessly or negligently place himself in a position where he would have to possess a firearm. He offered testimony that he was initially forced out of the club, where someone shot at him. He returned to the club to hide, but then left because he did not feel safe there. The district court held that by leaving the club he was seeking out trouble. The question is not whether leaving the club was reckless or negligent, but whether Clark recklessly or negligently placed himself in a situation where he would need to possess a firearm in order to ensure his own safety. He did not. In the sequence of events offered by the defense, Clark did nothing that would reasonably be expected to lead him to require a gun. Neither confronting the man who assaulted Stephenson, nor Clark's decision to leave the club in which he felt cornered are decisions that would normally put a person in mortal danger that would require a gun for protection. Instead, he needed the gun because he had been fired upon, a situation he did not negligently or recklessly encounter. Notably, when he left the club with the gun, Clark did not seek out the assailant, but instead tried to avoid him.

The third and fourth *Singleton* elements are related in this case. The third element is that the defendant had no reasonable legal alternative to violating the law. The fourth is that there was a reasonably anticipated direct causal relationship between the defendant's violation of the law and

avoidance of the harm. Here, Clark's legal alternative would have been to decline to accept the firearm offered by Tharpe. Whether or not that legal alternative was reasonable depends on whether Clark could reasonably have anticipated that taking the firearm and violating the law actually would keep him safe. In other words, did Clark reasonably think that taking the firearm would stop the assailant from shooting him?

The district court judge held that accepting the firearm could only put the defendant at greater risk: "I, frankly, can't see how he would have reasonably believed that his conduct of carrying a loaded firearm would avoid—in other words, if those guys were—I mean, they didn't know he had a gun—whether he had a gun the first time around. So it seems to me that we could have had the shoot out at the O.K. Corral out there between one of those guys and Mr. Clark had both pulled out guns and started shooting again." However, a jury could reasonably conclude that a person running from a gun-wielding assailant could harbor a reasonable belief that accepting a gun for his defense would serve to protect him from the assailant. Ultimately, whether Clark could have anticipated a direct causal relationship between accepting the gun and surviving the trip to his car is a matter for the jury. He need only present "some evidence" that he could have reasonably anticipated such a relationship. Either brandishing the weapon or firing it in his own defense if again confronted by the man who had shot at him could have helped Clark avoid being shot at again. Refusing the gun would have eliminated the possibility of using the gun to help him get safely to his car, and accepting it could reasonably be anticipated to aid the chance of his survival.

Other cases considering the justification defense require a similar relationship between illegal possession of a firearm and the prevention of harm. For example, in *Newcomb*, this court reversed

a district court decision that a justification defense was not warranted. 6 F.3d at 1139. There, the defendant had intercepted his girlfriend's son, taken the ammunition out of the son's loaded shotgun, and pocketed it. *Id.* at 1130—31. The son had shot people in the past, and had just announced that he was headed out to shoot somebody else. *Id.* Minutes after taking possession of the ammunition, the defendant was arrested and found to be a felon in possession of ammunition. *Id.* at 1131. As in this case, it is not absolutely certain that the harm would have occurred had the defendant not unlawfully taken possession of the gun or ammunition, nor did the possession absolutely prevent the harm. However, in both cases, the defendants could reasonably believe that, in violating the law, they were directly creating an obstacle to the feared harm.

On the fifth and final factor, the district court held that Clark did not present a prima facie case for justification because he possessed the firearm for longer than necessary. The district court identified two ways that he should have disposed of the gun sooner than he did: Clark should either have handed the gun to a friend or thrown it into nearby bushes. However, a jury could reasonably conclude that while Clark did have an opportunity to safely dispose of the weapon sooner than he did, he presented a prima facie case that between the moments when the danger ended by the arrival of the police and when he alerted the police to his possession of the gun, he had no such opportunity.

**IV.**

Because Clark has presented some evidence to support each element necessary to a conclusion that he was justified in possessing the gun, he was entitled to the accurate jury instruction on justification. For the foregoing reasons the judgment is **vacated** and **remanded** for a new trial.